IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Carlos Cuevas, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 CV 8347 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Benjamin Hernandez (Star #254), | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carlos Cuevas sues Berwyn Police Officers Benjamin Hernandez, Joseph Green, and Juan Salgado pursuant to 42 U.S.C. § 1983, alleging excessive force (Count I), false arrest/unlawful detention (Count II), conspiracy (Count III), failure to intervene (Count IV), and fabrication of evidence (Count V); Plaintiff also seeks indemnification from the City of Berwyn for the individual Defendants' liability (Count VI). Defendants jointly move to dismiss Counts II, III, and V for failure to state a claim.[1] *See* [37]. For the reasons stated below, this Court denies the motion.

## I.  The Complaint's Allegations

This case arises out of an interaction between Plaintiff and the individual Defendants that took place on the night of December 28, 2017. [34] ¶ 1. Defendants Hernandez, Green, and Salgado all serve as Berwyn Police Officers employed by Defendant City of Berwyn, and were at all relevant times acting under color of law

---

[1] Defendants answered Counts I, IV, and VI. *See* [39], [40].

as Berwyn Police Officers within the course and scope of their employment. *Id.* ¶ 6. Defendant City of Berwyn is a municipal corporation which employs or employed the individual Defendants at the time of the alleged events. *Id.* at ¶ 5.

Sometime late in the evening on December 28, 2017, Plaintiff's newborn daughter, Lucia, needed urgent medical care for significant health problems she had experienced since birth. *Id.* ¶ 10. Plaintiff's wife, Fatima, waited for Plaintiff to return home from work so she could take Lucia to the hospital while Plaintiff remained at home with their elder daughter, Ximena. *Id.* ¶¶ 11, 16. When Plaintiff arrived home, Fatima and Lucia left for the hospital. *Id.* ¶ 13. Ximena, who was dressed for bed given the lateness of the hour, wanted to wave goodbye to her mother and sister as they left for the hospital. *Id.* ¶¶ 12, 15. So Plaintiff took Ximena to the window located in the interior hallway of their apartment building, where they watched Fatima and Lucia leave. *Id.* ¶¶ 16, 18. Upon returning to their apartment door and attempting to re-enter, Plaintiff found that the door had closed behind them, locking them out. *Id.* ¶ 19. Plaintiff had neither his keys nor a working cell phone. *Id.* ¶¶ 8, 20. Unable to contact his wife, and unable to obtain assistance from his neighbors given the time, Plaintiff decided to call the police in order to gain access to his apartment. *Id.* ¶¶ 21–23.

Still wearing his jacket from work, Plaintiff took Ximena into his arms and placed her within his jacket, securing it around her so that she remained covered and warm at all times. *Id.* ¶ 27. Plaintiff then carried Ximena inside his jacket to the closest open business with a phone—a nearby gas station located about 600 feet away from his apartment building. *Id.* ¶¶ 23, 28. It took Plaintiff three minutes or less to

2

get inside the gas station from his apartment building. *Id.* ¶ 29. During those three minutes, Ximena was wrapped in his jacket, protected from the cold. *Id.* Once inside the gas station, Plaintiff called the police and waited for them to arrive. *Id.* ¶ 31.

Defendants Hernandez and Salgado arrived on the scene, followed by Defendant Green, and Plaintiff told them what had happened. *Id.* ¶¶ 33–34. Rather than assist Plaintiff, Defendants accused Plaintiff of having drugs (though they found no drugs after searching Plaintiff); the police then took Plaintiff and his daughter to the hospital. *Id.* ¶¶ 36, 38, 40.

After releasing Ximena to her mother at the hospital, Defendants arrested Plaintiff for willfully or knowingly endangering the life of his child, Ximena, under 720 ILCS 5/12C-5. *Id.* ¶¶ 43–44; [39] ¶ 44. Defendants never sought medical care for Ximena, even though they had brought her to a hospital. [34] ¶ 42.

Plaintiff alleges that the Defendant officers fabricated evidence and took overt acts in furtherance of their conspiracy to deprive Plaintiff of his constitutional rights, which included: (1) filing a false criminal complaint against Plaintiff when Defendants knew Plaintiff had not endangered the life of his child; (2) writing a false, misleading, and incomplete police report; (3) filing a false DCFS report claiming that Ximena had been neglected, when she had not; (4) providing false statements to prosecutors that Ximena's life was endangered and that Plaintiff had taken Ximena outside for an extended period of time; and (5) making false statements under oath in the criminal trial against Plaintiff. *Id.* ¶ 70.

Following his arrest, Plaintiff was held in custody until he could post bond. *Id.* ¶ 48. Defendants' pursuit of the criminal complaint against Plaintiff ultimately led to a bench trial in state court, where Plaintiff was found not guilty. *Id.* ¶ 57.

Plaintiff filed this action on December 20, 2019. [1]. Following Defendants' initial joint motion to dismiss, Plaintiff elected to amend his complaint, and filed the operative complaint [34] on May 27, 2020. The operative complaint asserts six claims; Defendants move to dismiss three of them under Federal Rule of Civil Procedure 12(b)(6). [37].

## II.   <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements will not suffice. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this

4

Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

**III.**  **Discussion & Analysis**

Defendants argue that Plaintiff fails to allege sufficient facts to support his claims for (1) false arrest/unlawful detention (Count II); (2) conspiracy (Count III); and (3) fabrication of evidence (Count V). [37] at ¶ 14. Defendants alternatively argue that these claims must be dismissed because the Defendant Officers are entitled to qualified immunity. *Id.* at ¶ 15. This Court will address these arguments in turn.

**A.**  **Plaintiff's False Arrest Claim (Count II)**

In Count II, Plaintiff alleges that the individual Defendants violated his constitutional rights when they falsely arrested and unlawfully detained him. To prevail on a false arrest claim under § 1983, a plaintiff must show there existed no probable cause for his arrest. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). In determining the existence of probable cause, this Court examines the facts and circumstances known to the police officers at the time of the arrest. *Id.* at 497. A police officer has probable cause to arrest if, "at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Id.* (quoting *Gonzalez c. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). The determination of probable cause depends upon the elements of the underlying criminal offense. *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). Here, the individual Defendants arrested Plaintiff

for violating 720 Ill. Comp. Stat. 5/12C-5, which provides that a person commits the crime of endangering the life or health of a child when he knowingly: (1) causes or permits the life or health of the child to be endangered; or (2) causes or permits a child to be placed in circumstances that endanger the child's life or health.

In moving to dismiss, Defendants argue that Plaintiff's allegations demonstrate that they possessed probable cause to arrest him. [38] at 6–7. Not so. Plaintiff alleges that Defendants lacked probable cause to arrest him for this (or any other) offense because they knew that he had not knowingly endangered his daughter's health or life. Instead, they knew from Plaintiff's statement that, even though Plaintiff took his daughter out in her pajamas late at night during the winter, he did so only because he had been locked out of his apartment by accident, and that he kept her swaddled in his jacket the entire time to shield her from the cold. Plaintiff further alleges that Defendants, in fact, knew neither Ximena's life nor health had been endangered, as evidenced by the fact that they never sought medical treatment for her. Plaintiff's allegations, taken as true at this stage, properly allege an absence of probable cause that Plaintiff committed, was committing, or was about to commit the crime of child endangerment at the time of arrest, and thus that Defendants lacked probable cause to arrest him. *Neita*, 830 F.3d at 497. Based upon these allegations, the Court denies Defendants' motion to dismiss Count II.

## B. Plaintiff's Conspiracy Claim (Count III)

In Count III, Plaintiff alleges that Defendants conspired to deprive him of his constitutional rights. A conspiracy claim under § 1983 requires Plaintiff to show that Defendants made an expressed or implied agreement to deprive Plaintiff of his

constitutional rights, and that their overt acts in furtherance of the agreement actually caused a deprivation of his rights. *Hegwood v. City of Berwyn*, No. 09-C-7344, 2011 WL 3882558 at *6 (N.D. Ill. Sept. 2, 2011) (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)).

Defendants contend that Plaintiff has failed to state a claim for conspiracy because Plaintiff "does not properly allege when a conspiratorial agreement between the Defendant Officers was formed or what the terms of this alleged conspiracy actually were." [38] at 12. The Court disagrees. Initially, to survive a motion to dismiss, Plaintiff need not plead the exact terms of the conspiracy with specificity; indeed, "conspiracies are often carried out clandestinely and direct evidence is rarely available." *Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015); *see also Williams*, 342 F.3d at 785. Instead, Plaintiff can rely upon circumstantial evidence to allege a conspiracy, as long as that evidence does not rest upon speculation. *Id.*

Here, Plaintiff pleads that the individual Defendants conspired with each other to "cover up" their use of excessive force and for falsely arresting him; he also alleges that Defendants formed this conspiracy "after the officers failed to find drugs . . . and before Ximena was given to her mom." [34] ¶ 69. Plaintiff additionally pleads that Defendants acted in furtherance of this agreement by: filing a false criminal report against Plaintiff for endangering the life of his child when Defendants knew Plaintiff had not done so; writing a false, misleading, and incomplete police report; filing a false DCFS report claiming Ximena had been neglected when Defendants knew Plaintiff had protected her from the cold; providing false statements to prosecutors that Plaintiff had endangered his child's life; and making false

7

statements under oath at Plaintiff's criminal trial. *Id.* ¶ 70(a)-(e). These factual allegations (again, taken as true at this early stage of the proceedings) state a plausible claim for conspiracy. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court denies Defendants' motion to dismiss Count III.

### C. Plaintiff's Fabrication of Evidence Claim (Count V)

In Count V, Plaintiff alleges that Defendants fabricated evidence, including false police reports, a false criminal complaint, a false claim of neglect to DCFS, and false statements to prosecutors. Defendants move to dismiss this claim, arguing that Plaintiff's allegations are entirely "conclusory" and should be given little weight. [38] at 14.

Plaintiff does not specifically say in his complaint which constitutional right he claims Defendants violated when they fabricated evidence. But, to the extent he is seeking to claim a violation of his Fourteenth Amendment due process right, the Court agrees that the claim necessarily fails, but not for the reason Defendants urge. "Allegations of evidence fabrication may state a colorable due process claim" but only when the fabricated evidence results in a deprivation of liberty. *See, e.g., Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). Plaintiff alleges that he was "improperly placed in custody before he was able to post bond," then found not guilty following a bench trial. [34] at ¶¶ 48, 57. And Plaintiff's release on bond and acquittal at trial foreclose a § 1983 claim based upon fabrication of evidence claim in this Circuit. *See Bianchi*, 818 F.3d at 315 (plaintiff who was immediately released on bond and acquitted of all charges suffered no liberty deprivation and thus no due-process violation); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015) (plaintiff who was

released on bond following his arrest and acquitted at trial cannot make out an evidence fabrication-based due process violation); *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010) (declining to allow an acquitted plaintiff who suffered pretrial detention to bring a due process claim for fabrication of evidence); *Brooks v. City of Chi.*, 564 F.3d 830 (7th Cir. 2009) (same). Because the law precludes Plaintiff from asserting a fabrication of evidence claim based upon the current allegations, the Court finds that, to the extent Count V claims a violation of his Fourteenth Amendment due process rights, it must be dismissed.

Plaintiff's allegations, however, also implicate the Fourth Amendment. *E.g. Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) ("the Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention"). Although Plaintiff's allegations do not specifically allege that Defendants' false statements formed the basis for any probable cause determination or pretrial detention, he does allege, that Defendants fabricated police reports and made false statements to justify their decision to arrest Plaintiff, to initiate criminal proceedings against Plaintiff, and to refer the matter to DCFS. He alleges, in other words, that Defendants knowingly and intentionally made false statements to support their probable cause narrative, and such allegations sufficiently state a Fourth Amendment claim. *E.g., Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (fabricating a police report to justify an arrest violates the Fourth Amendment). This is so whether Defendants fabricated evidence to support their arrest or to support a judicial determination of probable cause. Indeed, under *Manuel v. City of Joliet*, —— U.S. ——, 137 S.Ct. 911, 920 (2017), which holds that detention without probable cause violates the Fourth

9

Amendment when it precedes, and when it follows, the start of legal process in a criminal case, the distinction is immaterial. Plaintiff may proceed on Count V.

### D. **Qualified Immunity**

Finally, Defendants argue that, even if Plaintiff has sufficiently stated his claims, the Court should nonetheless dismiss the challenged counts because the doctrine of qualified immunity shields Defendants from liability.

While defendants normally present a qualified immunity defense on summary judgment, a court may, in some circumstances, consider the argument on a motion to dismiss. *E.g., Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 650 (N.D. Ill. 2011); *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). Dismissing a § 1983 suit at the initial pleading stage based upon qualified immunity is a "delicate matter": "on the one hand, qualified it immunity is a defense to suit rather than just liability, and should be addressed as early as possible"; on the other hand, Federal Rule of Civil Procedure 8 "does not require plaintiffs to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint." *Rusinowski*, 835 F. Supp. 2d at 650. *See also Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses). Because affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is only appropriate when the factual allegations unambiguously establish all of the elements of the defense. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). That is, the plaintiff "must affirmatively plead himself out of court." *Chi. Bldg. Design*, 770 F.3d at 614. That is not the case here.

Qualified immunity "shields government officials from liability under § 1983 'for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7th Cir. 2012) (citation omitted). Thus, courts must consider: (1) whether Plaintiff's allegations establish that Defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of Defendants' conduct. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011) (citing *Siliven v. Ind. Dep't. of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011)). A court maintains discretion to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances in the case at hand. *Id.* (quoting *Siliven*, 635 F.3d at 926.

Based on the current record, this Court finds dismissal under the doctrine of qualified immunity inappropriate. Plaintiff sufficiently alleges that Defendants lacked probable cause to arrest him for endangering the life or health of his child, and there can be no question that, in 2017, the Fourth Amendment right to be free from arrest without probable cause was clearly established. *See, e.g.*, *Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002) ("innumerable decisions rendered prior to January 1998 have clearly established the right to be free from arrest without probable cause."); *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) (noting that the constitutional right to be free from arrest without probable cause was clearly established by at least 1991). Plaintiff also alleges that Defendants fabricated false police reports to justify their decision to arrest him; again, there can be no dispute

11

that, in 2017, it was clearly established that fabricating a police report to justify an arrest violated the Fourth Amendment right to be free from unreasonable seizure. *Washington*, 481 F.3d at 551 (noting that, in 2001, a reasonable officer would have understood that fabricating a police report to justify an arrest violated arrestees' right to be free from unreasonable seizure). Based upon the record at this stage of the proceedings, this Court therefore denies Defendants' motion to dismiss based upon qualified immunity.

### IV.   <u>Conclusion</u>

For the reasons explained above, the Court denies Defendants' motion to dismiss Counts II, III, and V [37]. Defendants shall file amended answers by April 16, 2021, and the parties shall file a joint status report by April 23, 2021, proposing a reasonable fact discovery deadline, indicating whether they will need expert discovery, and indicating whether they are interested in a settlement conference. This Court will set case management deadlines in a future order.

Dated:  March 26, 2021

Entered:

John Robert Blakey
United States District Judge